## Case No. 10,310.

NORTH v. HOUSE et al.

[6 N. B. R. (1872) 365.] [1]

District Court, W. D. Texas.

BANKRUPTCY — ASSIGNMENT TO CREDITOR WITHIN SIX WEEKS OF FILING OF PETITION.

A debtor made an assignment of his stock in trade and notes of hand to one of his creditors within six weeks of the filing of a petition in bankruptcy against the debtor. Assignment *held* void under section thirty-five of the bankrupt act [of 1867 (14 Stat. 517)]; and assignee in bankruptcy entitled to recover from the preferred creditor the value of the goods and notes thus transferred to him.

[Cited in Mathews v. Riggs, 80 Me. 110, 13 Atl. 49.]

At law.

DUVAL, District Judge. This was a suit brought on the law side of the United States circuit court for the Western district of Texas, by W. F. North, assignee of the involuntary bankrupt, W. A. Rawlings, for the recovery of eighty thousand dollars, the alleged value of certain goods, wares, etc., and certain notes, accounts, etc., which the plaintiff charged the defendant with having converted to his own use. The plaintiff claimed to recover their value as part of the assets of the bankrupt's estate. The defendant answered, denying the allegations in the petition and joining issue.

The facts were, that the bankrupt, W. A. Rawlings, was a merchant in Huntsville, Texas, and has been for three or four years prior to this suit. That the defendant, Thomas W. House, did a forwarding and commission and wholesale business in Houston, Texas, where, in connection with his mercantile and commission business, he also conducted a banking, exchange and collecting business; that the defendant, House, had been for several years prior to this action the correspondent of the bankrupt at Houston; that he had sold him large bills of goods and that the bankrupt had shipped him a large amount of cotton; that the bankrupt's commercial paper was (or at least the greater part of it) payable at the counting rooms of Thomas W. House; that in September, eighteen hundred and seventy, when the bankrupt was north, purchasing goods, that the defendant, House, was with him; that at that time a portion of the bankrupt's paper, being a note to Sheldon & Company for about twenty-five hundred dollars, was past due, and Buckley, a member of that firm, tried to induce the defendant, House, in whose hands the paper

[1] [Reprinted by permission.]

was, to pay it. He declined to do so, but promised to see it paid out of the first shipments of cotton which would come to his hands from the bankrupt. He never paid it and it is still unpaid. The defendant, House, also informed Messrs. Evans, Gardner & Company, that he considered the bankrupt solvent, (the bankrupt had referred them to House,) and on this assurance, they, in September, eighteen hundred and seventy, sold him goods. That the bankrupt's paper, to the amount of thirteen thousand dollars, matured in January, February, and early in March, eighteen hundred and seventy-one, and was presented at the counting house of the defendant for payment. None of it was paid, and a considerable amount of it was protested and remained unsettled in the hands of House. That while this state of affairs existed, on the twenty-eighth of March, eighteen hundred and seventy-one (Rawlings, the bankrupt, having made on the last of February an ineffectual effort to borrow about three hundred dollars of House, and having then past due and in House's hands over fifteen thousand dollars of paper, and being then, besides, indebted to House himself in the sum of forty thousand or fifty thousand dollars,) came to Houston and attempted to induce the defendant or his agents to make him a further moneyed advance, (House was then temporarily absent from Houston,) but his agents refused. The bankrupt then proposed to sell them his storehouse, his stock of goods, valued at about twenty-five thousand dollars, and his notes and accounts, valued at about fifteen thousand dollars. This offer was accepted, and a deed was made to House on March twenty-eighth, eighteen hundred and seventy-one, expressing a consideration of about forty-three thousand dollars. That the payment was made by House assuming and paying certain debts and obligations of the bankrupt. That not a dollar was paid to the New York creditors, whose paper was endorsed to House for collection, and a large part of which was at that very time in his hands. That on receiving intelligence of the execution of this deed House made no objection to it, but took possession of the bankrupt's store, retained his clerks and placed one of his own in charge, and sold the goods in his own name. That four days after the transfer he paid, for the bankrupt, six thousand dollars to one Thomason, a creditor, and to Gibbs & Co., also creditors, about thirteen hundred dollars. That on May ninth, eighteen hundred and seventy-one, and within six weeks of the above transfer, Jehial Read & Co., for themselves and other New York creditors, filed a petition in bankruptcy against Rawlings, alleging said transfer to be an act of bankruptcy, charged it to be fraudulent, made House a party, and sued out an injunction. Rawlings was adjudged a bankrupt on June twenty-eighth, eighteen hundred and seventy-one; the injunction dissolved as to House,

it being admitted that he was solvent and able to respond in damages; the plaintiff elected assignee September fourteenth, eighteen hundred and seventy-one; and this suit instituted by him on December fourth, eighteen hundred and seventy-one.

The cause was tried before DUVAL, District Judge, at the January term, eighteen hundred and seventy-two, when he charged the jury as follows:

"Gentlemen of the Jury: This suit is brought by W. F. North, as the assignee of W. A. Rawlings, who, on the petition of certain of his creditors, was adjudged a bankrupt on the twenty-eighth day of June, eighteen hundred and seventy-one. This adjudication, however, related back and took effect on the ninth of May, eighteen hundred and seventy-one, when the creditors' petition was filed. After such adjudication, to wit: on the fourteenth day of September, eighteen hundred and seventy-one, a deed of assignment was made to said North by the register in bankruptcy, whereby all the estate, real and personal, of the bankrupt, including all the property conveyed by him in fraud of his creditors, vested in his assignee, and gave to the latter the right to bring and maintain suits for the recovery thereof. The petition in this case avers that on the twenty-eighth day of March, eighteen hundred and seventy-one, (though it seems from the evidence to have been a few days earlier,) the bankrupt being then insolvent and being also in contemplation of insolvency, and well knowing that such was his condition, fraudulently assigned and made over to T. W. House, one of his creditors, a stock of goods, wares and merchandise of the value of about fifty thousand dollars; and also notes, accounts, book accounts and debts, due said bankrupt, to the amount of about thirty thousand dollars. The petition further alleges, that at the time of such assignment the said House well knew that Rawlings was insolvent and in failing circumstances, and that he was in contemplation of insolvency and of bankruptcy, and that all of the property thus assigned to House was so done with a view to give him a fraudulent preference over his other creditors, and to hinder, delay and defraud them in the collection of their just debts. So much of the bankrupt law as applies to this case provides as follows: 'That if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, makes any pledge, payment, assignment, transfer or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefitted thereby, having reasonable cause to believe such person is in-

solvent, and that the same is made in fraud of the provisions of said act. the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it. or so to be benefitted.' The act further provides: 'That if such sale, transfer, assignment or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud.'

"In this case the questions for the jury to determine are: First, was Rawlings insolvent or in contemplation of insolvency at the time of his assignment to House, and did he make said assignment with a view to give a preference to him over other creditors? Second. did House have reasonable cause to believe that Rawlings was then insolvent, and that said assignment was made in fraud of the provisions of the bankrupt act? If the jury believe, from all the evidence in the case, that they should give an affirmative response to both these questions, then they must find a verdict for the plaintiff. And, to satisfy themselves on these points, the jury can look to all the facts and circumstances disclosed by the evidence, and draw such reasonable conclusions therefrom as they deem just and proper. The great object of the bankrupt act is to do away with all fraudulent preferences, by which one creditor in the collection of his debt obtains an unconscientious advantage over another, and to provide for a just and equal distribution of the bankrupt's assets among all his creditors. In order to render a transfer or conveyance fraudulent and void under the thirty-fifth section of the act, it is not necessary to bring home to the person receiving such transfer or conveyance actual knowledge that the party making the transfer was insolvent or intended a fraud upon the bankrupt act; it is sufficient to render the deed fraudulent and void as to such person, if he had sufficient knowledge of the financial condition of such party to put a man of ordinary business capacity on enquiry as to the condition of the debtor; and if, in this case, you believe that the evidence shows the bankrupt, Rawlings, to have been insolvent on the twenty-eighth of March, eighteen hundred and seventy-one, (the date of the transfer,) and that the defendant. House, either knew, or had from his knowledge of the bankrupt's business, reasonable cause to believe him insolvent, and unable to pay his commercial paper and his debts as they fell due, then the deed of assignment is fraudulent and void. and conveys no right to the party in whose favor it was made. And if the jury believe that the transfer under consideration was not made in the usual and ordinary course of business of the debtor, then that fact is prima facie evidence that it is fraudulent, and unless rebutted or controlled by other evidence in the case, is sufficient to establish knowledge, on the part of those dealing with him, of the bankrupt's insolvency.

"If the jury believe, from the evidence and under the instructions given them, that the transfer in question is fraudulent and void, they will return a verdict for the plaintiff, and allow him such amount as you believe from the testimony was the value of the goods and notes on the twenty-eighth of March, eighteen hundred and seventy-one, with interest thereon, at eight per cent., per annum, down to the time of this trial. Nor, if the deed is fraudulent, is the defendant, House, entitled to credit for the amount he may have paid to certain creditors of Rawlings, for the payments themselves would be in fraud of the bankrupt act, and give an undue preference to those paid over the other creditors, if the bankrupt was then insolvent and the defendant had reasonable cause so to believe.

"If the jury find for the defendant they will so say by their verdict.

"(Signed)        T. H. Duval, U. S. Judge.

"The jury, if they find for the plaintiff, will state in their verdict against which of the defendants the same is rendered."

And, at the instance of the plaintiff, he gave the following additional instructions:

"In determining the question as to whether or not the defendant, House, had reasonable cause to believe that the bankrupt, Rawlings, was insolvent at the date of the transfer, you have a right to look at all the facts in evidence bearing on this point; the business and personal relations of the parties; the connection, if any, the defendant had with the commercial paper of the bankrupt, and his opportunities and means of knowing his financial condition, and if from these and other facts in evidence you believe that the defendant had reasonable cause to believe the bankrupt insolvent, then the deed is void and you will find for the plaintiff.

"Hancock & West, Plff's Att'ys.
" Given.          (Signed) T. H. Duval.

"The mere fact that the defendant was not present when the deed was made, and knew nothing of the transaction, does not affect its character. If, when informed of it, he did not repudiate it, but accepted benefits under it, then he is as much bound by the acts of his agents in accepting the deed as if he had accepted it himself. It was, under the law, the privilege of the defendant to have surrendered the property and repudiated the deed, had he desired to do so.

"Hancock & West, Plff's Att'ys.
"Given.          (Signed) T. H. Duval.

"The mere fact that the defendant may have paid a valuable consideration or advanced money on the deed in question will not validate it. if he had reasonable cause to believe the party insolvent at the time of its execution, and he was so insolvent.

"Hancock & West, Plff's Att'ys.
"Given.          (Signed) T. H. Duval."

The defendant asked no instructions.

The jury returned a verdict for the plain-

tiff for the sum of thirty-nine thousand one hundred and sixty-five dollars and sixty-five cents.